Good morning, Your Honors, and may it please the Court, my name is Blair Schlechter, counsel on behalf of Elvia Flores-Barrios. The primary issue before the Court today is whether the Board of Immigration Appeals erred in finding Ms. Flores' motion to reopen was untimely. The answer is yes, and therefore this matter should be remanded to the Board of Immigration Appeals. The first issue I'd like to touch on is the fact-finding that was engaged in by the Board of Immigration Appeals. As the Court is probably aware, the immigration judge in this case found on Ms. Flores' motion to reopen that she had been deported in absentia. And on Ms. Flores' appeal, the Board of Immigration Appeals engaged in fact-finding and found that that was not the case, that she had been in fact present for her hearing. But the Board of Immigration Appeals is not to engage in fact-finding as a general matter. If we conclude that the BIA erred in this fact-finding and that the IJ finding that she was not present during the initial deportation hearing, what follows? Well, I think what follows is she was in custody at the time of the hearing back in 1993. So when you combine those two facts, the fact that she was, the immigration judge found she was deported in absentia, and she was in custody at the time of the hearing, I think those two facts alone point very strongly to the fact that she was not there. And subsequently, she also stated... Why wouldn't she have been brought to the hearing by the government? I don't know, Your Honor. You say points very strongly. I don't understand. You know, if she's off somewhere, you could say, well, we don't have any evidence she's there. But if she's in federal custody, she's in federal custody, right? She's not in a county jail somewhere. Yeah, I believe she was at the same facility. But I'm asking you for purposes of my question. Assume that the IJ found properly, correctly, and that the BIA incorrectly overruled that factual finding. So assume that she was not present at that earlier hearing. What follows? Well, I think that she would be in, her motion to reopen would be timely. Would be timely. Yes, Your Honor. So then, if that's so, we remand to treat the motion as timely, and then it goes forward from there. Yes. Because she's in federal custody, or she's in custody somewhere, and she can't make it to the hearing on her own. Yes, correct. So it all hinges on whether or not we think the government brought her there or didn't bring her there. Correct, Your Honor. Isn't the BIA the one that makes the ultimate decision on that?  In this case, that immigration judge already found that she was deported in absentia. And actually, I should point out that this immigration judge who heard her motion reopen was the same immigration judge that ordered the deportation back in 1993. And so I think, you know, some deference should be given to the findings of the immigration judge. Well, I'm sure the board gave deference, but ultimately it is the board that makes findings, right? Well, no, the Board of Immigration Appeals is not supposed to make factual findings. It is not supposed to make. I'm not sure what you mean by it's not supposed to make. When we get findings from the board, we look at the findings of the board. That's the body that we review. How it allocates responsibilities between itself and its immigration judges is largely up to the board, isn't it? Well, under Code of Federal Regulations 1003.1, the Board of Immigration Appeals is generally not supposed to make any factual findings except for clear error. And the Board of Immigration Appeals did not say anything about applying that standard. And moreover, I'd point out the fact that when a Board of Immigration Appeals is going to make factual findings, I think they're supposed to do it in a panel of three judges. And in this case, only one judge issued a decision. So I don't think the Board of Immigration Appeals was in any position to make any factual findings in this case. And now an additional issue is the fact that, you know, even assuming they could make factual findings, I would submit that they were incorrect in this case. Incorrect? Can we reverse it to clear error? I'm sorry, Your Honor? Can we reverse the BIA finding a fact to clear error? Well, I believe it would be abuse of discretion. I mean, the ultimate question of timeliness can be reviewed to know, though. But whether the ---- The question of timeliness. I'm asking about whether she was present. The IJ says she was not present. The Board says she was present. Is there any review that we have over their factual finding? Yeah, I believe it would be abuse of discretion. In this case, you know, the Board of Immigration Appeals just relied on two facts as conclusive. The first fact was that Ms. Flores was served with an order to show cause on, I believe, January 13th, stating that a deportation hearing was to be scheduled and that she was going to be in custody until then. And the second fact that the Board of Immigration Appeals relied on is that she was given the order of deportation by the Immigration Attorney. But as to the first fact, that she was given an order to show cause, obviously that was given six days before the hearing. It doesn't show that she was present for her hearing. And, in fact, if you look at that order to show cause, it states that notice of the hearing date is to be calendared. It didn't set a hearing date. It said that it was going to be mailed to Ms. Flores. But the undisputed facts in this case are that she was in custody. And so, obviously, if she was mailed a notice of a deportation hearing, she didn't get it. And as to the second fact, the fact that she received a deportation order, the order itself does not state how it was served, when it was served. And, obviously, the order itself would have been given at some point after the hearing was typed up and then signed by the judge. So neither of these facts establish that she was present at her hearing. And as I referred to earlier, I think if you look at the entirety of the facts in this case, those two facts don't show that she was present. The IJ says that the government motioned to proceed in absentia on January 19, 1993. Is that right? Is that from the record? Yes. And where is that? I believe that's AR Administrative Record. I'm finding it right now, Your Honor. That is at AR 49. That's the early distinction of the IJ. There's no transcript of her proceeding? Not that I'm aware of, Your Honor. You know, I think a related question is, you know, even though there's no transcript, is the IJ made very specific findings that are somewhat in conflict with the original order of deportation. The IJ found that the government motioned to proceed in absentia and she was thereafter found to be deported in absentia. I guess the question being, did the IJ kind of come up with this out of the ether? Probably not. I mean, this is the same immigration judge who was present back in 1993. And I think that's additional evidence, you know, that she was not taken to her hearing. She was deported in absentia. And I think what follows, as we talked about, is that her motion to reopen is therefore timely. And the fact that in absentia, deportation results in essentially rescission of the original deportation and you go back to the start and the government would have to proceed to, you know, start deportation proceedings again. So I would submit that, you know, Ms. Flores, this motion to reopen is clearly timely. And one additional issue I'd address, although the government seemingly conceded, is the issue of jurisdiction. Obviously, the immigration courts found that there was no jurisdiction under the departure bar rule, but clearly under the circuit's authority there's jurisdiction of this appeal. She wasn't the present subject of deportation hearings, and she was deported in absentia under the departure bar rule, but that's fine to her. And so with that, I suppose I would reserve the rest of my time for rebuttal. Okay, thank you. We'll take from the audience. All right. Once again, if the court is still in the comfort of the respondent. You know, you're speaking rapidly and mumbling. I'm having a little trouble hearing you sometimes. My apologies, Your Honor. I do have a tendency to speak quickly. I will attempt to slow myself down. The board's decision in this case should be affirmed and the petition for review denied, as the board properly concluded or probably exercised its discretion in concluding that the petitioner failed to establish that reconsideration of the prior order was warranted. As to the issue of departure bar, you know, not to concede the issue as to the validity of the departure bar, but here the merits question as to whether or not the petitioner was ordered to move in absentia or not essentially resolves the applicability of the departure bar. So if the court were to conclude that the board was correct in declining to reconsider, then essentially it's saying that the petitioner was not ordered to move in absentia and, therefore, it's correct on the merits, departure bar is irrelevant. If the board was wrong and you... I have an I.J. finding that she was not present. And an earlier I.J. ruling stating that she was not present. The board does have the authority to review the I.J.'s findings of fact for clear error. And here the board stated in its original decision that the record clearly reflected that the petitioner was present at the hearing. But what do we make of the fact that the I.J.'s, excuse me, the B.I.A. in support of its conclusion that the evidence is clear that she was there, the evidence the B.I.A. gives us in no way shows that she was there. The evidence given by the B.I.A. doesn't demonstrate that at all. Well, I think the documents cited by the board, I think, do establish the petitioner's presence. That's the question I asked your opposing counsel. What is our standard for reviewing the B.I.A.'s finding of fact, reversing the I.J.'s finding of fact? Well, I think generally we are in the context of abuse of discretion. However, findings of fact are reviewable for substantial evidence. I think the abuse of discretion standard is somewhat more stringent. But certainly if the record does not compel the conclusion that the petitioner was present at the hearing, then I think this Court does need to affirm the agency's decision. To the extent there was a finding of fact. I was reading to you from the B.I.A.'s decision when the B.I.A. said the record clearly indicates that she was in attendance. The B.I.A. cites two pieces of evidence, and I'm just reading from the B.I.A. Order AR-25. Quote, the order to show cause was served personally on the respondent on January 12, 1993, with her address was listed as, they've got a glitch in their grammar, as the processing center in San Pedro, an immigration detention center. OK, so first piece of evidence, she was personally served with order to show cause. And then, second sentence, order of deportation issued a week later indicates she was served personally. Paul, that's talking about service in both instances. Neither one of those establishes presence. Well, I think the service of the order of deportation, if you look at the order itself, yes, service can be in person or by mail. But here, the order itself in the documents, not the certificate of service on it, but the document itself establishes that the petitioner was present at the hearing. And the reason for that is that the removal order itself states that appeal was waived. Well, the petitioner needed to be present. You can't waive appeal for an in absentia order. Do you want to put my nose in the order of deportation? Can we have a look at that? Page 85 of the record. Page what? Page 85 of the record. There's also the summary of the order on page 86. And this says, I'm now just reading A.R. 85. On the basis of respondent's admissions, I have determined that he is. Now, that suggests that maybe, I mean, this is a she, right? Yes, although her name is correct on the, and a number and country of removal are correct on the form. I have determined that he is deportable on the charge stated in the order so caused. Respondent has made no application for relief. It is ordered that the respondent be deported. A copy of this decision has been served on respondent. How does that tell me that she was there? The statement that she was served with the document does not establish her presence. I acknowledge that. However, again, the fact that she waived appeal is indicative of her presence. Also, the fact, again, the summary of the order. How do we know that she's even, I mean, it says that she's been waived, that she's waived appeal. It also says he. I mean, this seems to me far from clear proof that she was there. The IJ, whose process this is, has found that she's not. And she's got a statement here in the record that the BIA is saying, well, I'm not going to pay any attention to that. She herself says, I was prevented from going. A number of issues are impacted. I think as to her statement, her statement first of all occurs in the context of a motion to be considered. I understand that. It was filed almost 20 years after the original hearing. Prior to that point, she never raises the issue. Well, up until that point, I mean, the BIA is coming out of left field saying she wasn't there. Prior to that point, she's appealing on the ground that she wasn't there, as found by the IJ, and that the IJ made a mistake of law, which the IJ did if she was not there. Well, she never argued that she was ordered to move in as sentia and that the, you know, she did not make that factual decision. Never argued when? You never argued to the BIA before that second time? Over in front of the immigration judge. That was not the basis of her original motion to reopen. And, in fact, her motion to reopen suggested that she had indeed been at the hearing. She was complaining about the fact that the immigration judge had given her the instructions on the bars to, if she didn't deport, if she didn't leave the country, she would be ineligible for the leave for the next five years. The original motion to reopen was complaining, oh, she heard these notices from the immigration judge. The immigration judge didn't say anything about reentering, and, therefore, the bars to the leave should not apply. So her original argument was essentially predicated on the notion that she was indeed present at the hearing. It wasn't until, again, her motion to reconsider. Can you show me that argument in the record? It's a brief. It starts on page 51, goes through 55 of the administrative record, I believe. Pages 54 and 55 are the relevant portions. And what in here tells you or should tell us that she's saying I was there? There's no statement that she was there. Again, this is a brief. So tell me what you're relying on. I'm relying on the fact that she, her argument is that the immigration judge, the immigration judge gave the notices that as to ineligibility for relief, if she didn't I have to speak more slowly and point me to the language that you're relying on. Page 54 to 55. Yes, I'm there. Let's take the facts committed by Bureau of Citizenship. What line are you reading from? Very bottom of the page 54. And what line? The immigration line 26. Okay. The immigration judge was clear when he ordered her deported and goes through the notice requirements. So that's just reading from the order. That's correct, correct, which is what the immigration judge does orally at the conclusion of the hearing. So her argument essentially was that the immigration judge gave her these notices, but there was nothing in those notices. And what evidence do you have that this was done orally rather than in writing? I can't point to something specific in the. This looks like boilerplate language that I'm very familiar with because I read it all the time. Yes. So what makes you think that this was delivered orally? Page 86 of the record is the summary of the immigration judge's decision. Again, issued on January 1993, which is the date of the hearing, signed by the immigration judge. This written notice was provided to the alien in English and in Spanish. Oral notice of the contents of this notice was given to the alien in his or her native language. So that's an indication that the petitioner was present in order to receive oral notices. Again, that's the summary of the immigration judge's decision. I think going back to the burden of proof issue, though, I think it is the context for looking at it is not whether or not the evidence in the record is sufficient to establish her presence. I think it's whether the record compels the conclusion that she was not present. Well, no, I think the burden of proof goes the other way. We have a finding by the I.J. that she was not present. And in order for the BIA to get over that, it has to find that the I.J.'s order was clearly mistaken. So you've got to contend for your position that the I.J.'s order was clearly wrong. Isn't that right? I would disagree with that. And why do you disagree with that? Because once the agency has made a factual determination, it's that determination that's reviewed by this Court. But isn't it correct, as your adversary has said, that the BIA can reverse a factual finding by the I.J. only upon a finding that the I.J. was clearly wrong? Yes, that's correct, Your Honor. Okay. Therefore, we look at the BIA's order to see whether it can be sustained on the basis that the I.J. was clearly wrong. So you've got, in order to sustain the BIA, you've got to show us that the BIA was correct in showing that the I.J. was clearly wrong. Isn't that right? I don't think so, because the issue here is a binary issue. The petitioner either was or was not present at the hearing. I got that. And when the board reverses the I.J.'s finding, it's essentially making the ultimate factual determination of the agency as a whole is that the petitioner was indeed present at her hearing. I know, but that's not an answer to Judge Fletcher's question about... I'm sorry, Your Honor. That's not an answer to Judge Fletcher's question whether if the BIA reverses the I.J., it has to find that the I.J. is clearly wrong. Binary, primary, whatever it is, what's the standard for the BIA's reversing the I.J.? I would argue it is substantial evidence because there are only two possibilities. And so when the board reverses the I.J.'s determination, there's only one possibility remaining. Either you're misunderstanding the question or you're avoiding the question. I think the administrative rule is, and you can correct me if I'm misstating it, that the BIA can reverse a factual finding of the I.J. if the factual finding of the I.J. is clearly wrong, but it cannot do so unless it's clearly wrong. Is that right? Yes, that's correct. And the BIA indeed does say here that the evidence clearly establishes, which I take it to be their shorthand to say that the I.J. is clearly wrong. Are you telling us that we don't have the authority to decide whether the BIA has abided by its own regulation? That is to say that we don't have the authority to decide whether, in fact, the I.J. was clearly wrong. Is that what you're telling us? No, Your Honor. To the extent that there's a procedural argument that the Board was applying an incorrect standard, certainly this Court can review that for clear error. No, it appears to be clear. It's stated that I'm willing to say, even though the language is a little bit imprecise as to clearly, I'm willing to assume that the BIA is telling us that it has decided that the I.J. was clearly wrong. So I think it's stating the correct standard. The question is whether or not the evidence it gives us satisfies that standard. Yes. And, again, I believe that when you have a determination where there are only two possibilities, I mean, after the... There's that binary stuff. I just don't get it. Things are clear or not clear, whether the possibilities are one, two, three, or a thousand. I think that the... Yes. My... That's my argument. I don't have an AOT. I apologize, Your Honor. But do you have a response to your opposing counsel's statement that under the rules, you need a panel of three to reverse an IJ's findings? I don't believe that's correct, Your Honor. Okay. I don't believe that's correct. All right. Let me ask you one other question. In view of the circumstances and facts of this case, including the fact that the petitioner has three American U.S. citizen children, one of whom is a minor, her husband's an LPR, he submitted an I-130 application, which has been approved. She's been here for almost 20 years. She worked legally. She reported to the immigration authorities frequently. In view of all of that, don't you think you might consider mediation in this case? I don't believe this is necessarily a case that would be mediated. No, not necessarily. I'm just saying, would you be unwilling to go to mediation? I would not be unwilling to consider mediation. I wouldn't say I would agree to it, but I certainly would consider it if the petitioner would request that. It would need to be clarified as to what the basis was. But I'm always open to considering whether mediation would be appropriate. I would urge that the Court not order mediation, but, again, if that's something the petitioner would like to request, I would certainly consider it. Thank you. Okay. Thank you, Commissioner. Just briefly, Your Honors. I just want to talk briefly, again, about the Board of Immigration Appeals. You know, although the Board of Immigration stated that they found it was conclusive evidence that she was there, they did not actually purport to apply the clearly erroneous standard. And I don't have I presume that they applied the regulation. I'm sorry? We can presume that they know the regulation, applied the proper standard. I mean, ultimately, we don't have to be convinced that they're right, right? We just have to be convinced that a rational board could find the IJs finding to be erroneous. Well, I think there's Isn't that a test for us? Well, I think I would disagree and say there would be two stages. The first stage is whether they have the right to engage in fact-finding. Two, whether the fact-finding was actually correct. And I think on the first issue, they weren't supposed to be engaging in fact-finding unless Well, can't they review the fact-finding of the IJ and say he's clearly wrong? Well, they can if they apply the clearly erroneous standard. And I believe, as I mentioned, I believe they're supposed to be in the panel three. I forget the subsection, but it is Code of Regulations 1003.1D. I forget the subsection. But I believe they're supposed to meet in panel three in order to make findings of fact. They didn't do that in this case. It was just one judge who issued the opinion. But regardless, I think, you know, the evidence, I would say, is one-sided. There's really no fact that actually shows she was present at the hearing. And I think that's where counsel referred to some of those, some of that boilerplate language that was mentioned about the consequences of failing to report for deportation. But that was in the written order that was prepared afterwards. That's not something that was discussed at the hearing or there's any evidence that was discussed at the hearing. I've got two questions for you. One is, if we were to suggest or order mediation, would you want, do you want mediation in this case? Well, this case was originally a mediation case. Already was. And we offered to accept a remand, so the Board of Immigration Appeals and the government declined that request. So, obviously, at this point, we're at where we're at. And I think, you know, I would submit on the evidence we're clear entitled to a remand in any event, and that's what I think would be appropriate. Well, it's not a question of what you think would be an appropriate resolution. The question, this is, I assume your mediation was before the Morton Memorandum. I'm sorry? I said I assume mediation was before the Morton Memorandum. That's the Morton Memorandum. I'm sorry, I'm not familiar with that, Your Honor. Okay. Well, the government's position has changed somewhat for the better recently through an administrative determination of which cases they're interested in pursuing and which they're not. And it may be that this case would fall within the latter category. So you might benefit if there were mediation in this case. You might not. You never know what will happen. Yeah. So I assume you're willing to try again for what you say with mediation. Yeah, my client would be interested in anything that allows her to. Okay. My second question is, I'm now not assuming mediation, although mediation might, in fact, be a very good idea. But for purposes of my question, I'm not assuming mediation. What appears to have happened here is that the I.J. had no question about the prior order. The I.J. simply says it was ordered in absentia. Because the I.J. appears to have no question about it, the I.J. gives no explanation as to why she concludes it is in absentia. She was, as you say, the original I.J. So she was there. Whether your client was there is a different question, but she was there. And if this were disputed in front of the I.J., the I.J. may be able to give quite interesting and useful answers to the questions raised by the board. For example, this form document that recites it was given orally, she might say, well, you know, I just signed those damn things. And the fact that it says he instead of she, well, that's entirely consistent because I never saw those people. So that is to say, we've never given the I.J. a chance to explain what the I.J. assumed was clearly true, unquestioned, undisputed, and all of a sudden the B.I.A. is going the other way on her. Would you object to agreement to the I.J. so the I.J. can actually engage in some sort of detailed fact finding as to why the I.J. thinks that this was in fact in absentia? I don't think so. I would say, though, that, you know, I mean, I guess I would say that I think that, you know, I'm not sure that there needs to be a definitive explanation from the I.J. for purposes of the, I guess, of this appeal. You know, I think... It seems to me quite clear that if, in fact, this original deportation order was in absentia, the I.J. got the law wrong because the I.J. doesn't pick up on the fact that if she's in absentia because she's incarcerated, that means that it's timely for purposes of the reopening. So, I mean, the real question really is, as we started out, I mean, what follows if she was in absentia, what follows if, in fact, she was in absentia is she got a time of motion to reopen. Yes, correct, Your Honor. Yes, and so... And the I.J. seemed to think that, well, that was beyond dispute. The I.J. didn't, that was not troublesome at all. This was not a sort of a, we had some fact-finding, we had some testimony. I find that she's telling the truth. I find that he's lying. There was nothing. The I.J. just says no in absentia. Yes, that's a mysterious case and interesting. So, you know, in conclusion, I would submit that, you know, obviously Ms. Flores's motion to reopen is timely, and we would request that she be abstained and remanded. Thank you. Thank you, Your Honor. Judge, I saw you abstained for a minute. Well, that's your argument in United States...
judges: Kozinski, Reinhardt, Fletcher